IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID LAMAR MILLER, ) <br> ID #1228416, ) <br> Petitioner, ) <br> vs. ) <br> ) <br> NATHANIEL QUARTERMAN, Director, ) <br> Texas Department of Criminal ) <br> Justice, Correctional Institutions Division, ) <br> Respondent. ) | No. 3:06-CV-2327-M (BH) <br> ECF <br> Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

**A. Nature of the Case**

Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2254 to challenge his sentence after conviction for sexual assault of a child in Cause No. F03-73517-NH. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural and Factual History**

In October of 2003, petitioner was charged by indictment of sexual assault of a child enhanced by a prior robbery conviction. (Trial Transcript at 2-3). On March 19, 2004,[1] petitioner pled *nolo contendere* to the charge and pled true to the enhancement paragraph. (R. 1.:5-7). The

---

[1] Page one of the record indicates April 2004, but statements on the record clearly reflect that it occurred in March 2004. (*See* R. 1.:20, 35).

trial court accepted petitioner's open plea and, after hearing testimony from the complaining witness and her mother, found evidence to support his guilt beyond a reasonable doubt but deferred a finding at that time for possible future adjudication. (R. 1.:9-20). After petitioner testified on March 30, 2004, the trial court found petitioner guilty, and sentenced him to twelve years of imprisonment. (R. 1:21-35). Petitioner filed a direct appeal asserting that he received ineffective assistance of counsel because counsel failed to move to withdraw petitioner's no contest plea when it became clear during petitioner's testimony that he believed he was not guilty of the offense. The Fifth District Court of Appeals affirmed petitioner's conviction because there was insufficient evidence to rebut the presumption that counsel provided reasonably effective assistance of counsel. *Miller v. State*, No. 05-04-00585-CR (Tex. App. – Dallas, Feb. 28, 2005, pet. ref'd).

On October 20, 2005, petitioner filed a state application for writ of habeas corpus. (State Habeas Transcript at 2). The Court of Criminal Appeals denied petitioner's state application on November 29, 2006, without written order on the findings of the trial court without an evidentiary hearing. (S.H.Tr.:cover).

On December 14, 2006, petitioner filed the instant petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent filed an answer on March 19, 2007, (*see* Answer) and provided the state-court records. Petitioner filed a reply brief on April 20, 2007.

## C. Substantive Issues

Petitioner asserts that: (1) his *nolo contendere* plea was involuntary; (2) he received ineffective assistance of counsel during his plea hearing and sentencing; and (3) the trial court erred.

2

**D. Exhaustion**

Respondent does not contend that petitioner failed to exhaust claims at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INVOLUNTARY PLEA

In his first claim, petitioner asserts that his *nolo contendere* plea was involuntary because he

4

did not understand the nature of the charge against him and the consequences of his plea.[2] Although not characterized in terms of ineffective assistance of counsel, he also contends that he would not have entered a plea but for erroneous advice from his attorney.[3] In his second claim, petitioner specifically asserts claims of ineffective assistance of counsel which directly go to the voluntariness of his plea.

A plea of guilty or *nolo contendere* waives a number of constitutional rights.[4] *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Therefore, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of a such a plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead . . . was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting

---

[2] Within his first ground for relief, petitioner also contends that the trial court abused its discretion relative to a denial of a motion for new trial. Such contention does not affect the voluntariness of petitioner's plea and will be considered with petitioner's third claim.

[3] This ineffective assistance claim encompasses petitioner's assertion that his plea was unlawfully induced by his attorney.

[4] In general, the law applicable to guilty pleas is equally applicable to pleas of *nolo contendere*. *Matthew v. Johnson*, 201 F.3d 353, 360 n.9 (5th Cir. 2000); *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990).

*Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a . . . plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). A "plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Taylor*, 933 F.2d at 329. A plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of [his or her] plea, and voluntarily chooses to plead . . . without being coerced to do so, the . . . plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

6

**A. Lack of Understanding**

In Claim 1, petitioner alleges that entered his plea without understanding the nature of the charge against him and the consequences of his plea. In particular, he asserts that he was unaware that a plea of *nolo contendere* has the same effect as a plea of guilty and he was under the influence of psychotropic drugs that clouded his judgment when he made the plea. He further asserts that if he had understood what a *nolo contendere* plea meant, he would not have made an open plea to the court.

The record reflects that when petitioner pled *nolo contendere* on March 19, 2004, before the trial court in this case, the following exchange occurred:

> THE COURT: You're charged by Indictment with sexual assault of a child, that's a second degree felony. Do you understand what you're charged with?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Now, the second degree felony carries a punishment of two to twenty years and a fine up to $10,000. The Indictment in this case, however, includes an allegation that you have a prior conviction for robbery, which would enhance the punishment range up to the first degree range. And that range carries a punishment from five to 99 years or life and a fine up to $10,000. Do you understand the punishment range?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Now, I understand from the paperwork here that you intend to enter a plea of guilty to the Indictment as charged, and enter a plea of true to the enhancement paragraph, is that correct?
>
> MR. ROBINSON: He's pleading no contest, Judge.
>
> THE COURT: No contest. Okay. No contest to the offense and true to the enhancement paragraph, is that correct?
>
> THE DEFENDANT: Yes.

7

THE COURT: Are you doing that freely and voluntarily?

THE DEFENDANT: Freely, ma'am.

THE COURT: I'll warn you that if you plead guilty the Court may find you guilty and set your punishment anywhere within the range allowed by law. Understanding that do you still wish to plead guilty? I mean no contest, I'm sorry.

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that you do not have a plea bargain agreement, that the Court will be setting the punishment in the case.

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand the admonition regarding probation, if you should be placed on probation, your requirements to register as a sex offender if convicted – I think we are missing the forms for the sex offender admonition. We don't have them here. We need a form for that. Why don't you have a seat for a minute and we will get a form for your attorney to talk to you about.

(Recess taken)

THE COURT: Come on back up here, Mr. Miller. I've given you some time to talk to your attorney about the requirements of sex offender registration under Chapter 62 of the Code of Criminal Procedure, and you read through the Court's admonishments with him, and he gave you an opportunity to ask questions, is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand the whole thing that you read in those written admonishments?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions of me?

THE DEFENDANT: No, ma'am.

THE COURT: All right. Do you understand all of the rights that you waived when you signed this entire set of plea papers?

> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Understanding everything we have talked about do you still wish to plead no contest?
>
> THE DEFENDANT: Yes, ma'am.

(R. 1:5-7). At sentencing on March 30, 2004, petitioner stated "Yes" when his attorney stated that petitioner had entered a plea of no contest. (R. 1:21). Petitioner's signed, sworn stipulation of evidence was then admitted into evidence, along with petitioner's plea of true to the enhancement paragraph. (R. 1:8). In the stipulation, petitioner stipulated that he committed the offense as charged in the indictment. (Tr.:19).

The record further reflects that petitioner signed a plea agreement waiving his right to a jury trial and his right to confront and cross-examine witnesses, pled *nolo contendere* to the offense of sexual assault of a child, and pled true to the enhancement paragraph. (Tr.:16-18). This agreement states that petitioner's plea was an open plea, and that if a defendant enters a nolo contendere plea without a plea agreement, the trial court may assess punishment anywhere the range of punishment allowed by law. (Tr.:16). This document also contains the following statement above the signature lines for the defendant and defense counsel:

> I, the defendant herein, acknowledge that my attorney has explained to me, and I have read and understand, all of the foregoing admonitions and warning regarding my rights and my plea, and that my statements and waivers are knowingly, freely, and voluntarily made with full understanding of the consequences. I request that the Court accept all my waivers, statements, agreements, and my plea.

(Tr.:17).

When petitioner was questioned by his attorney, he stated that it was his desire to be placed on probation because of health problems and because he takes care of his daughter. He also testified

9

that if given probation, he knew that he would have to report, pay fees, and stay out of trouble. Petitioner further testified that he was currently on parole and that he could "pretty well" complete the terms of probation. (R. 1:21-25). When questioned by the prosecutor, petitioner admitted that he wrote a statement to the police officer in his handwriting, but further testified that the statement was "not exactly" his version of what happened. Petitioner testified that when the complaining witness asked for a beer, he initially told her she could not have one but then told her that she could have one. Petitioner further testified that the complaining witness had three beers and was drunk. She laid down beside him in the bed and put her hands on him; he asked her how old she was when she entered the room and told her she was too young for him. Petitioner also testified that he was drinking and taking medication at the time of the incident. Finally, petitioner denied that he ever hurt the complaining witness, that he had an erection, or that he penetrated her, but he acknowledged that he told the probation department that "I don't know if I committed this crime, but I cannot deny it." (R. 1:26-30).

     At the state habeas level, petitioner's counsel at his plea hearing, Fred McDaniel, submitted an affidavit. In this affidavit, McDaniel states that he discussed the plea paperwork with petitioner, and petitioner never indicated that he had any competency problems or that there was something he did not understand. (S.H.Tr.:38-9). The trial court found that petitioner entered his plea freely and voluntarily, he was duly admonished of the consequences of his plea, he was aware that he entered a plea without a plea bargain, and his plea was not subject to attack merely because he did not correctly assess every relevant factor in reaching his decision to plead no contest. (S.H.Tr.:35). The Court of Criminal Appeals denied petitioner's state habeas application on its merits. (S.H.Tr.:cover). The trial court's findings are not based on an unreasonable determination of the

facts in light of the evidence presented, and the decision is not contrary to federal law.

While petitioner contends that he was not aware that a plea of *nolo contendere* had the effect of pleading guilty, the record from the plea hearing is that petitioner was fully admonished that the trial court would find him guilty and would sentence him to some sentence within the range of punishment for a first-degree felony. In fact, petitioner's testimony reveals that he was hoping to be given a probated sentence by the judge and was made aware that he would still have to register as a sex offender if he received a probated sentence. Petitioner also acknowledged during his testimony that he had previously received deferred adjudication probation for robbery in 1994 and had been adjudicated guilty a year later and sent to prison. The record therefore demonstrates that petitioner knew that he was to be sentenced for the crime he was indicted for and that petitioner has knowledge of the criminal judicial system. Indeed, petitioner's testimony that he was on drugs and alcohol when the incident occurred and his statement to the probation department that he could not deny that he committed the crime support his plea of *nolo contendere*. Petitioner did not wish to plead guilty to the crime, but did not wish to contest the issue of guilt.

With regard to petitioner's assertion that he was under psychotropic drugs at the time he made the plea, although petitioner testified that he had previously been prescribed Motrin and a muscle relaxer for a back injury, he also testified that he had not been taking medication since he entered jail.[5] Motrin and a muscle relaxer are not psychotropic drugs. In any event, however, petitioner's mere statement that he was under the influence of some drug that clouded his judgment

---

[5] Petitioner has submitted to this Court medical records from Methodist hospital in Dallas, Texas, indicating that he was prescribed ibuprofen and a muscle relaxer on August 17, 2003, due to frequent headaches. In addition, petitioner has submitted prescriptions written for him when he was in the Dallas County jail in 2004. These documents indicate that petitioner received actual signed prescriptions for muscle relaxers in February of 2004 and a prescription for ibuprofen in April of 2004, only. (*See* 10/24/07 motion to amend, ex. ##4, 5).

11

does not overcome the presumption of verity accorded solemn declarations made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that "[s]olemn declarations in open court carry a strong presumption of verity [and] [t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"). He has not overcome the presumption of regularity and "great weight" accorded state-court records. *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records "are entitled to a presumption of regularity").

Given the totality of the circumstances, it is evident that petitioner understood the charge against him and the consequences of his plea. Thus, his plea appears knowing, intelligent, and voluntary. Unless petitioner's specific claims of ineffective assistance of counsel impacted his decision to plead *nolo contendere*, the Court should find that petitioner entered his plea knowingly, intelligently, and voluntarily.

**B. <u>Ineffective Assistance of Counsel</u>**

In his first claim, petitioner contends that he would not have entered a plea but for erroneous advice from his attorney regarding the nature of his plea. He further contends that his attorney knew that petitioner was on medication which clouded his judgment and led him to believe that he was pleading not guilty to the charge. In his second claim, petitioner specifically contends that his attorney was ineffective because he led petitioner to believe that a *nolo contendere* plea was a not guilty plea and did not properly investigate the charge against him. These contentions clearly raise a claim of ineffective assistance of counsel which could affect the voluntariness of petitioner's plea. Petitioner also asserts in his second claim that counsel failed to question witnesses even though there

were conflicting statements and failed to call an expert witness.[6]

A plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)). With respect to plea process, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972). However, once a criminal defendant enters a knowing, intelligent, and voluntary plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel under existing precedent of the United States Supreme Court, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a petitioner alleges he was denied effect-

---

[6] Although these claims appear unrelated to the voluntariness of petitioner's plea because they relate to events that occurred after petitioner had pled *nolo contendere*, the Court will consider them in the voluntariness context in an abundance of caution. The state plea and sentencing hearings sort of ran together in this case. The Court will also consider these latter two claims in the next section addressing ineffective assistance at sentencing.

ive assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

At the state habeas level, petitioner's counsel at his plea hearing, Fred McDaniel, submitted an affidavit. In this affidavit, McDaniel states that because the case was reset many times, he spoke to petitioner on numerous occasions. McDaniel further states that petitioner elected to enter an open plea of no contest and that prior to doing so, McDaniel discussed with petitioner his option of either an open plea, before a judge or a jury, or a plea bargain, his right to a jury trial, and the option of a trial before the court. McDaniel further states that petitioner's explanation of the incident varied: petitioner said that he could not remember what happened, that the victim made sexual advances towards him, and that he participated and was sorry for doing so. Finally, McDaniel states that he did not do anything that petitioner did not want him to do. Petitioner had concluded that his best chance of avoiding a long prison sentence was to take responsibility and convince the judge that he was sorry, but that despite McDaniel's best efforts to channel petitioner's testimony, petitioner did not accept responsibility and did not act remorseful. (S.H.Tr.:38-9). The trial court found that petitioner was represented by an attorney "who exercised all of the skill and expertise which one could reasonably of an attorney" and that petitioner was not denied his right to effective assistance of counsel at his plea hearing. (S.H.Tr.:35-6). The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus based on the findings of the trial court. (S.H.Tr.:cover). This decision is not an unreasonable application of the *Strickland* standard.

While petitioner asserts that his attorney was ineffective for failing to investigate, question

14

witnesses, or have an expert testify, petitioner does not show what evidence would have been discovered or presented that would have caused him to change his plea. In that regard, while petitioner asserts that there was evidence presented to his attorney that petitioner was innocent of the charges, petitioner's claims that he was too intoxicated to remember what happened and that the sixteen-year-old complaining witness made sexual advances towards him do not constitute evidence that he was innocent of the sexual assault of a child. While petitioner asserts that his attorney led him to believe that a plea of *nolo contendere* was a not guilty plea, the record from the hearing conducted by the trial court contradicts this assertion, as petitioner testified at some length about his desire to receive a probated sentence and his ability to successfully complete probation, and the record shows that the trial court admonished petitioner about the range of sentence and found petitioner guilty. Petitioner has not shown either that his attorney erred or that, had he not erred, petitioner would have pled not guilty to the charge. Petitioner has shown no ineffective assistance of counsel which rendered his plea involuntary.

For all of these reasons, the Court should find that petitioner voluntarily, intelligently, and knowingly entered his plea of *nolo contendere*. Claims 1 and 2 entitle petitioner to no habeas relief to the extent they go to the voluntariness of his plea.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's second claim also contains allegations of ineffectiveness of counsel at sentencing. More specifically, petitioner alleges that counsel rendered ineffective assistance when he failed to question witnesses and call an expert witness at sentencing.

To show prejudice in the sentencing context, petitioner must demonstrate "a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been

15

significantly less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004) (holding that *Spriggs* survived *Glover v. United States*, 531 U.S. 198 (2001) in the § 2254 context). Petitioner has not carried this burden with respect to any claim raised in this federal action. He has shown no reasonable probability of a less harsh sentence had his attorney questioned the witnesses at sentencing or called an expert witness.[7] In the absence of prejudice, petitioner's claims of ineffective assistance of counsel at sentencing entitle him to no federal habeas relief.

## V.  TRIAL COURT ERROR

In his first ground for relief, petitioner contends that the trial court abused its discretion by denying his motion for new trial because the court should have sua sponte withdrawn his plea due to presented evidence which fairly raised an issue as to his innocence. In his third ground for relief, petitioner alleges that the trial court abused its discretion in accepting petitioner's plea. Petitioner further asserts that his plea should have been withdrawn when it became evident to the trial court, from the pre-sentencing report and from observation of petitioner, that he was not competent to assist counsel or understand the nature of the charge or proceeding. The Court considers these claims in the order they would have occurred rather than in the order presented by petitioner.

**A.  Competency**

A criminal defendant must be mentally competent to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). A defendant is competent to stand trial when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational

---

[7] To the extent any other claim of ineffective assistance raised in this action goes to the sentencing context, such claims also fail for lack of a showing of prejudice.

as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) ( per curiam ). The same standard applies when determining whether a defendant is competent to plead guilty, *Godinez*, 509 U.S. at 396-98, or *nolo contendere*, *Shoulders v. Dinwiddie*, No. Civ.-06-890-C, 2007 WL 275977, at *8 (W.D. Okla. Jan. 26, 2007). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings."[8] *Godinez*, 509 U.S. at 401 n.12. Furthermore, "[a]s in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence." *Id.* at 402 n.13.

Petitioner contends that his own demeanor, the pre-sentence report, and a conversation he had with a bailiff should have caused the trial court to withdraw his plea and conduct a competency hearing. Petitioner has pointed to no part of the record where his demeanor indicated that he did not know what was occurring, and has not alleged what was contained in the pre-sentence report that would have indicated that petitioner was not competent to consult with his attorney, understand the charges against him, or plead no contest. He admits that the conversation he had with a bailiff was off-the-record. As support for his contention, petitioner states that he was taking medication that made him drowsy and dizzy. (*See* Memorandum at 7). At the state habeas level, petitioner's counsel, however, submitted an affidavit in which he states that petitioner never indicated to him that he had any competency problems or that there was anything that he did not understand. (S.H.Tr.:39). Moreover, the record from the plea hearing reveals that petitioner was able to answer

---

[8] "The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez*, 509 U.S. at 401 n.12. Because of this difference, the Court considers the competency issue separately from the voluntariness of petitioner's pleas.

every question asked of him by his attorney, the prosecutor, and the judge, and that petitioner was able to state quite clearly why he wanted a probated sentence and was able to explain quite clearly his belief that he was not at fault for what had occurred. Nothing in the record before this Court indicates that the issue of competency was raised before or during petitioner's plea hearing. Rather, the record before this Court is that petitioner had the ability to understand the plea proceedings. The Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus on the findings of the trial court. (S.H.Tr.:cover). This decision is not contrary to federal law, and this claim entitles petitioner to no relief.

## B. New Trial

Although petitioner contends that the trial court abused its discretion when it denied his motion for new trial, the record does not reflect the filing of any such motion. For that reason alone, this claim warrants no habeas relief. In any event, petitioner premises this claim on purported evidence which called into question his guilt and thus should have prompted a sua sponte withdrawal of his plea. A trial court, however, does not err in accepting a voluntary plea following proper admonishments from the court. *See Starks v. State*, 266 S.W.3d 605, 613-14 (Tex. App. – El Paso 2008.) Moreover, the evidence in this case supports the trial court's finding of guilt. Because the trial court committed no error relative to the allegations of petitioner, this claim entitles him to no federal habeas relief.

## VI. STATE CONSIDERATION OF CLAIMS

Petitioner raised all of his claims in his state writ. The Court of Criminal Appeals denied the state writ on the findings of the trial court, and thus petitioner's claims were adjudicated on the merits. This decision at the state level is consistent with applicable Supreme Court precedent. The

decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## VII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

SIGNED on this 11th day of December, 2008.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE